1 | Larry D. Harvey (*Pro Hac Vice*)
Colorado Bar No.10207
2 | lharvey@ldhpc.com
LARRY D. HARVEY, P.C.
3 | 5290 DTC Parkway, Ste. 150
Englewood, Colorado 80111
4 | Telephone: (303) 220-7810
5 | Facsimile: (303) 850-7115

6 | Robert A. McGuire, III (*Pro Hac Vice*)
Colorado Bar No. 37134
7 | ram@lawram.com
ROBERT MCGUIRE LAW FIRM
8 | 9233 Park Meadows Drive
Lone Tree, Colorado 80124
9 | Telephone: (844) 318-6730
10 | Facsimile: (866) 352-1051

11 | Stephen Weisskopf (State Bar No. 213596)
12 | sweisskopf@weisskopflaw.com
WEISSKOPF LAW
13 | 1800 Century Park East, Ste. 600
Los Angeles, California 90067
14 | Telephone: (310) 734-2026
15 | Facsimile:  (310) 421-4180

16 | *Attorneys for Defendant Joan M. Politte*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, Plaintiff, v. RAJMP, INC.; JOAN M. POLITTE; MERRILL LYNCH BUSINESS FINANCIAL SERVICES, INC.; CHICAGO TITLE COMPANY; TBC CORPORATION; SC TELECOM, LLC; WELLS FARGO BANK, N.A.; PACIFIC WESTERN BANK; OUTFRONT MEDIA, INC.; HALLE PROPERTIES, L.L.C.; POFACO, INC.; COUNTY OF SAN DIEGO; MIDAS REALTY CORPORATION; KELLY M. POLITTE, as the Personal Representative of the | Case No.: 3:17-cv-00515-AJB-WVG<br><br>**JOAN M. POLITTE'S REPLY IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing<br>Date: June 21, 2018<br>Time: 2:00 P.M.<br>Location: Courtroom 4A |
|---|---|

1  ESTATE OF ROBERT A. POLITTE;
2  TED R. POLITTE as the Personal
   Representative of the ESTATE OF
3  ROBERT A. POLITTE,
4                         Defendants.

Defendant Joan M. Politte ("Joan Politte"), through her counsel, hereby submits her Reply in Support of her Motion for Summary Judgment (ECF No. 115).[1]

## INTRODUCTION

The government concedes that "generally, and in the right situation, res judicata can apply to the United States," (Pl.'s Resp. to Def.'s Mot. Summ. J. 10:10–:11, ECF No. 122 (the "Response"))[2], yet takes an incongruent position that Federal Rule of Civil Procedure 13(a)—which creates res-judicata consequences for parties that fail to bring compulsory counterclaims—does not apply to the United States *at all* in federal tax cases, (*Id.* § I). There is no statutory basis whatsoever for the government's position, nor is the case law cited by the government either controlling or persuasive. The government's first argument in its Response is misplaced and must fail because Rule 13(a)'s requirements apply to the federal government just as they apply to any other litigant. In *Commissioner v. Sunnen*, 333 U.S. 591 (1948), the United States Supreme Court itself addressed res judicata in a tax case and laid out principles for lower courts to follow suit. The government's second argument—that the collection claims brought here were not compulsory counterclaims in the Refund Action (because they supposedly do not logically relate to the earlier refund claims)—is sophistry, pure and simple.

**I.    The Government Is Wrong That Rule 13(a) Does Not Apply To Tax Cases.**

---

[1] The government argues Joan Politte should not have filed her Motion for Summary Judgment because the argument was not raised at the ENE Conference. This is not true. The issue of res judicata pursuant to Fed.R.Civ.P. 13(a) was listed first in Joan Politte's Non-Confidential Statement. At the ENE Conference, as part of the group discussion relative to Motions for Summary Judgment, counsel for Joan Politte stated that the summary judgment motions would cover "anything that is dispositive at this point," to which there was unanimous consent by counsel for the government.

[2] Page citations to documents e-filed in this case refer to PACER's pagination.

The government is categorically wrong that Rule 13(a) "does not apply to federal tax cases." The Federal Rules of Civil Procedure "govern the procedure in <u>all</u> civil actions and proceedings in the United States district courts." Fed. R. Civ. P. 1 (emphasis added). These Rules are authorized by statute and promulgated by the Supreme Court. 28 U.S.C. § 2072. "Procedural rules apply to the government as well as to defendants." *Armentero v. I.N.S.*, 412 F.3d 1088, 1096 (9th Cir. 2005) (quoting *Wilson v. O'Leary,* 895 F.2d 378, 384 (7th Cir.1990)). Rule 13(a) applied to the Refund Action, it applies to this case, and it applies as a matter of course to every other case heard in this Court.

Nothing in the text of Rule 13(a) exempts the government from the Rule's application. *See* Fed. R. Civ. P. 13(a). In the absence of some ambiguity in the plain language, no further inquiry is required (or permissible) to conclude that the government is subject to the Rule's requirements. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 540–41 (1991) ("We give the Federal Rules of Civil Procedure their plain meaning. As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous.") (internal citation and quotation marks omitted); *see also Republic of Ecuador v. Mackay*, 742 F.3d 860, 864–65 (9th Cir. 2014) ("We apply the 'traditional tools of statutory construction' to interpret the federal rules. …. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.").

The language of Rule 13(a) imposes a universal requirement upon all litigants filing a pleading to:

> state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require

>adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a)(1). Because nothing in this language has any "uncertainty of meaning or intention," the text cannot be regarded as ambiguous. *See Republic of Ecuador*, 742 F.3d at 865 ("To determine whether there is an ambiguity, we must assess whether there is 'an uncertainty of meaning or intention.'").

Neither public policy nor the desirability of facilitating tax collection affords any valid justification for disregarding the unambiguous language of Rule 13(a). *See Bus. Guides, Inc.*, 498 U.S. at 547 ("The dissent's dichotomy between represented and unrepresented parties is particularly troubling given that it has no basis in the text of the Rule. … [T]his Court will not reject the natural reading of a rule or statute in favor of a less plausible reading, even one that seems to us to achieve a better result.") (construing Rule 11). Even were this Court to look behind the plain language of the Rule itself, the silence of the Advisory Committee Notes—which mention no exceptions for the government in tax cases—only reinforces the conclusion that Rule 13(a) contemplates no government-only exception to the Rule's universal application. *Cf. id.* at 545 ("Had the Advisory Committee intended to limit the application of the certification standard to parties proceeding *pro se,* it would surely have said so...").

Under Rule 13(a), the failure of a party—including the government—to bring a compulsory counterclaim has claim-preclusive effects under the doctrine of res judicata.

>The purpose of Rule 13(a) is to prevent multiplicity of litigation and to promptly bring about resolution of disputes before the court. Rule 13(a), moreover is "particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint." ….[W]here a party has failed to plead a

> compulsory counterclaim, the claim is waived and the party is precluded by principles of res judicata from raising it again.

*Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1201 (9th Cir. 2010).

The government points to cases in lower courts, which wrongly held that Rule 13(a) is inapplicable to tax cases. But the Supreme Court precedent cited by Joan Politte controls and provides the proper authority in this action. Res judicata applies to federal tax cases, and since Rule 13 serves the same purposes as res judicata, there is no principled reason why Rule 13(a) ought not apply as well.

In *Sunnen,* the Supreme Court stated:

> The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'

333 U.S. at 597. "The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment." *Id.* "These same concepts are applicable in the federal income tax field." *Id.*[3] The purpose served by Rule 13(a)—"to prevent multiplicity of litigation and to promptly bring about resolution of disputes before the court," *Mitchell*, 611 F.3d at 1201—is virtually identical.

---

[3] There is no reason to believe that the rationale of *Sunnen*, which expressly applied to a case about income taxes, should be any different in this case, which involves corporate employment and unemployment taxes.

In *Federated Dep't Stores, Inc. v. Moitie*, the Supreme Court rejected the Ninth Circuit's creation of a public-policy exception to the doctrine of res judicata, saying, "There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*.'" 452 U.S. 394, 401 (1981).

> This Court has long recognized that "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." …. We have stressed that "[the] doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts…." …. The language used by this Court half a century ago is even more compelling in view of today's crowded dockets.

*Id.* (internal citations omitted).

The government ignores res judicata and focuses on Rule 13(a), but this is sleight of hand. The same principles that justify applying res judicata in tax cases applies equally to justify application of Rule 13(a) to the government in those cases as well.

In the Refund Action, the parties litigated whether the government had an interest in specific property by virtue of tax liens that spanned all of the tax periods that are presently at issue before this Court. That subject matter implicated any counterclaims the government might have had with respect to liability of the Refund-Action plaintiffs for RAJMP's taxes—especially given that the government portrays the alter-ego determination in the Refund Action as valid basis for collecting RAJMP's unpaid tax liability from Joan Politte "in full."

The government's reliance upon *Caleshu* is misplaced, for that case construed Rule 13(a) without giving due regard to the Supreme Court's unwillingness to accept

5

"public policy" and other non-textual grounds as justifications for departing from the doctrine of res judicata. Close review of *Caleshu* reveals the Eighth Circuit elevated its own sense of the "implicit" intent of Congress above the plain language of Rule 13(a), perceiving a conflict between the Rule and federal tax collection statutes that does not exist.

In *Caminetti v. United States*, the Supreme Court stated, "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms." 242 U.S. 470, 485 (1917) (internal quotation marks omitted). Because this principle guides courts in their interpretation of the federal rules as well as federal statutes, and because the language of Rule 13(a) is plain and unambiguous, the task of interpretation engaged in by the Eighth Circuit in *Caleshu* simply was not warranted.

The government argues the requirement to file a compulsory counterclaim would limit the remedies available to the IRS in collecting taxes (Response 12). But this is not true. In the event of a suit (or counterclaim) brought to reduce a tax liability to judgment, the filing of the government's claim tolls the statute of limitations on tax liens (which is otherwise only ten years, per 26 U.S.C. § 6502(a)), thus extending the time the IRS ultimately has to collect on the outstanding tax liability. *United States v. Ettelson*, 269 F.2d 193 (7th Cir. 1947); *United States v. Wodtke*, 627 F. Supp. 1034 (N.D. Iowa 1985); *United States v. Jones*, 699 F.Supp. 248 (D. Kan. 1988) (no time limit exists as to enforcement of a timely judgment obtained in a timely filed action). In addition, the remedies available to the IRS as a judgment creditor are vast, not least of all because a judgment will, in effect, keep the time for collection open *indefinitely*. 26 U.S.C. § 6322; *United States v. Overman*,

424 F.2d 1142 (9th Cir. 1970); *Wodtke*, 627 F. Supp. at 1034; *but see*, *United States v. Home Beneficial Life Ins. Co., Inc.*, 31 A.F.T.R. 2d 73-1085 (E.D. Tenn 1973) (government held barred by limitations). Other additional remedies are also available to the government in the judicial setting. Subpoenas can be issued under Fed. R. Civ. P. 69. A perfected judgment lien will encumber all property of the judgment debtor allowing for levy, seizure, foreclosure, or any other collection activity. 28 U.S.C. §3201. Further, there is no merger of a previously filed federal tax lien with the judgment lien, which preserves both the priority and the administrative remedies available due to the tax lien, while allowing the government to rely upon either the judgment lien or the federal tax lien or both. I.R.M. 25.3.5.6 (12-07-2010).

The government inexplicably states that requiring it to file a compulsory counterclaim in the Refund Action would have caused it to lose its right to foreclose against taxpayer property. (*See* Response at 18:16–:19.) This argument is wrong. A judicial sale can always be held whenever an asset is located. 28 U.S.C. §§ 3102, 3202, 3203. *See* The United States Department of Justice, Tax Division Judgment Collection Manual § IV(D)(1)-(2)[4]. The IRS may continue to be involved even after the entry of judgment such as through the employment of a levy. *See Id.* § IV, E(1) ("One effective collection technique that the trial attorney should always attempt to employ is the IRS administrative levy."); *see also* 26 U.S.C. § 6331. Following judgment, the government can also seek appointment of receivers and hold auctions. *See* 28 U.S.C. §§ 2001, 2002, 2004 and 3103.

---

[4] https://www.justice.gov/tax/tax-division-judgement-collection-manual-4-collecting-judgment (last visited Mar. 20, 2018).

These judicial remedies are more extensive than the IRS's administrative remedies, *and no timeframe limits their use*.

Another erroneous claim by the government is that requiring the government to file compulsory counterclaims under Rule 13(a) would "grant[] control to the alter ego (and ultimately the taxpayer) to decide how long as IRS has to collect on liability, a result not intended by Congress." (Response at 15:21–:23.)  This misleading argument ignores the previously cited sections of the government's own Tax Division Judgment Collection Manual.

In essence, the government is asking this Court to subordinate Rule 13(a) to what the government asserts to be its own superior statutory rights to exercise certain procedural options for the collection of taxes.  But the government's argument must be rejected, for the Supreme Court has consistently favored the Federal Rules of Civil Procedure whenever a conflict has been asserted between a Rule and a procedural right.

In *Burlington N. R. Co. v. Woods*, the Supreme Court considered whether a state law mandating a penalty for unsuccessful appellants was a substantive right of the appellee that was abridged by Fed. App. P. Rule 38, which gave the appellate court discretion over such awards.  480 U.S. 1 (1987).  Recognizing that procedural rules may not "abridge, enlarge or modify any substantive right," the Court nonetheless held that, "Rules which incidentally affect litigants' substantive rights do not violate this provision if reasonably necessary to maintain the integrity of that system of rules." *Id.* at 5–6.

The Court reinforced the primacy of the federal rules over more substantive rights that are actually procedural in character when it elaborated in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.* that,

> The test is not whether the rule affects a litigant's substantive rights; most procedural rules do. …. What matters is what the rule itself regulates: If it governs only "the manner and the means" by which the litigants' rights are "enforced," it is valid; if it alters "the rules of decision by which [the] court will adjudicate [those] rights," it is not…. Applying that test, we have rejected every statutory challenge to a Federal Rule that has come before us.

559 U.S. 393, 406–07 (2010) (examining Fed. R. Civ. P. 23) (internal citations omitted). The Court added that, "compliance of a Federal Rule with the Enabling Act is to be assessed by consulting the Rule itself, and not its effects in individual applications." *Id.* at 410.

The government's suggestion that its interest in the availability of the full panoply of statutory procedures for tax collection trumps the requirements imposed by the plain language of Rule 13(a) cannot be countenanced in the face of *Woods* and *Shady Grove*. The Rule's requirement for the government to bring its compulsory counterclaims like any other litigant only governs the "manner and means" by which the government's substantive rights (to be paid what it is owed) are enforced. Rule 13(a) does nothing to alter the "rules of decision" by which the court will adjudicate the government's right to receive payment of taxes. *Shady Grove*, 559 U.S. at 406–07. Accordingly, the government's suggestion that this Court must reject the plain language of Rule 13(a) in order to preserve timelines for the use of other methods of collecting taxes from Joan Politte must be rejected.

## II. The Government Is Wrong That The Collection Claims At Issue In This Case Were Not Compulsory Counterclaims In The Refund Action.

As its second responsive argument, the government asserts that even if Rule 13(a) applies to federal tax collection cases, the collection claims here were not compulsory counterclaims because they did not "logically relate" to the claims in the Refund Action. This is preposterous and in direct conflict with the California District Court. *See Bradford*

*v. U.S.*, No. C-84-20178 WAI, 1985 WL 6014 (N.D. Cal. Dec. 19, 1985) (Employment taxes subject to prior collection action and subsequent refund action were "same transaction"). The Refund Action and this case are both tax collection cases involving the same tax liens. This Court need look no further than the government's own motion (seeking collateral estoppel on the alter-ego determination) to recognize that the government is speaking out of both sides of its mouth about the identicalities between the two cases. If this case and the Refund Action are genuinely similar enough for the government to prevail on its collateral estoppel argument, then there *is* no case—for the government's claims would be subsumed by application of res judicata.

Here, the government had ample opportunity to file a counterclaim in the Refund Action, in which the complaint and answer were amended three times. The government chose not to assert any claims of its own, but instead limited its remedy to contesting the refund sought by the Refund-Action plaintiffs. Now the government argues that Joan Politte should be denied the right to defend herself against a liability of $11.5 million because the alter-ego issues in the two cases are so similar that relitigating the question here would be a redundancy, while asking this Court at the very same time to "unsee" the similarity between the two cases for purposes of Joan Politte's claim that res judicata applies. The government simply cannot have it both ways. Joan Politte is entitled to summary judgment.

## **CONCLUSION**

This Court should grant summary judgment for Joan Politte as to all counts brought against her in this action.

Respectfully submitted this 21st day of March, 2018.

| ROBERT MCGUIRE LAW FIRM | LARRY D. HARVEY, P.C. |
|---|---|
| */s Robert A. McGuire* | *s/ Larry D. Harvey* |
| Robert A. McGuire (*Pro Hac Vice*) | Larry D. Harvey (*Pro Hac Vice*) |

*Attorneys for Defendant Joan M. Politte*

# PROOF OF SERVICE

## STATE OF COLORADO, ARAPAHOE COUNTY

I am employed in the aforesaid county, State of Colorado; I am over the age of 18 years old and not a party to the within action; my business address is 5290 DTC Parkway, Ste. 150 Englewood, CO 80111.

On the below date, I served a copy of the **JOAN M. POLITTE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope, postage prepaid, addressed as follows:

Jeremy.Hendon@usdoj.gov
Christian.Mejia@usdoj.gov
Brian.shaffer@msrlegal.com
Walter.delorrell@sdcounty.ca.gov
ord@ordnorman.com
deldan@pmcos.com
kpolitte@polittelaw.com

**(BY MAIL)**
I deposited such envelope in the mail at Englewood, Colorado. The envelope was mailed with postage thereof fully prepaid.

I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with the United States Postal Service. The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at Denver, Colorado, in the ordinary course of such business.

**X   (BY ELECTRONIC SERVICE VIA CM/ECF SYSTEM)**
In accordance with the electronic filing procedures of this Court, service has been effected on the aforesaid party above, whose counsel of record is a registered participant of CM/ECF, via electronic service through the CM/ECF system

**(BY ELECTRONIC MAIL)**
On the below date prior to 5:00 p.m., PST, I transmitted the foregoing document(s) by electronic mail, and the transmission was reported as complete and without error. A true

and correct copy of the electronic transmission is attached to this declaration. This method was made pursuant to the agreement of counsel.

**(BY FACSIMILE)**
On the below date, I transmitted the foregoing document(s) by facsimile sending number. Pursuant to Rule 2.306(3)(4), I caused the machine to print a transmission record of the transmission.

**(BY FEDERAL EXPRESS)**
I am readily familiar with the business practice of my place of employment in respect to the collection and proceeding of correspondence, pleadings and notices for delivery by Federal Express. Under the practice it would be deposited with Federal Express on the same date with postage thereon fully prepared at Denver, Colorado in the ordinary course of business. I am aware that on motion of the party, service is presumed invalid if delivery by Federal Express is more than one day after the date of deposit with Federal Express. Executed on the below date, at Denver, Colorado.

**(BY PERSONAL SERVICE)**
I caused to be delivered such envelope by hand to the addressee noted above. Executed on the below date at Denver, Colorado.

X    **(FEDERAL)**
I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 21, 2018, at Englewood, Colorado.

*s/ Nancy Elliott*
Nancy Elliott