UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                            Plaintiff,<br><br>v.<br><br>RAJMP, INC., et al.,<br><br>                        Defendants. | Case No.: 17-CV-515-AJB-WVG<br><br>**ORDER ON UNITED STATES' MOTION FOR PROTECTIVE ORDER REGARDING DISCOVERY PERTAINING TO THE DETERMINATION THAT ROBERT A. POLITTE AND JOAN M. POLITTE ARE ALTER EGOS OF RAJMP, INC.** |

## I.  <u>INTRODUCTION</u>

There are good and valid reasons why the twin concepts of res judicata and collateral estoppel exist in our system of jurisprudence. The matter adjudged or decided once with all parties fully participating should not again be the subject of dispute. It is wasteful, costly, time consuming, and unnecessary to plow ground that already has been plowed. Multiple and repetitive bites at the apple eventually leave only the core. Here, Defendants have had several opportunities, both procedurally and substantively, to push back and defend against the Government's efforts to find Robert A. and Joan M. Politte ("Polittes") as alter egos of RAJMP, Inc. ("RAJMP"). Each time, the Polittes have lost They have lost administratively before the Internal Revenue Service ("IRS") and judicially before the

1

District and Circuit Courts and the Supreme Court has denied certiorari.[1] And yet, undeterred, or perhaps in denial, the Polittes continue to press the narrative that the alter ego issue remains alive and well and that the apple still has more bites left in it. No, it does not. Upon reviewing and considering the Parties' moving and opposing papers, the Court hereby GRANTS the Government's Motion in its entirety for the reasons discussed below.

## II.  <u>BACKGROUND</u>

This Action concerns Defendants' federal tax liability and follows two prior related lawsuits, *Robert A. Politte, et al. v. United States of America*, No. 07-CV-1950-AJB-WVG ("Alter Ego Action") and *Joan Politte and Robert A. Politte v. United States of America*, 13-CV-2591-WYD-MJW (D. Col.) ("TFRP Action") (collectively, "prior actions"). For purposes of the Government's instant Motion, the Alter Ego Action is pertinent. Judge Sammartino presided over the Alter Ego Action. In relevant part, on July 31, 2009, Judge Sammartino issued an order denying Politte's motion for partial summary judgment. (Alter Ego Action Doc. No. 120.) The Politte's motion for partial summary judgment turned on a single legal issue: "whether they are the alter ego of RAJMP." (*Id.*) Judge Sammartino ultimately determined the Polittes constituted alter egos of RAJMP and, on that basis,

---

[1] As elaborated below, in the Alter Ego Action, the Court ruled on summary judgment that the Polittes constituted alter egos of RAJMP. The Polittes subsequently appealed the Court's decision to the Ninth Circuit, which, on December 3, 2014, affirmed the District Court's decision in its entirety and denied the Polittes' petition for rehearing and rehearing en banc. (9th Cir. Case No. 12-55927, Doc. No. 97.) Thereafter, the Polittes sought certiorari, which the Supreme Court denied on November 9, 2015. (S.C. Case No. 15-102.) In the instant Action, on November 26, 2018, Joan Politte sought the Court's reconsideration of its alter ego finding by filing a motion to certify the order denying Ms. Politte's summary judgment motion for interlocutory review ("motion to certify"). (Doc. No. 148.) The Court denied that motion on August 12, 2019. (Doc. No. 172.) On September 9, 2019, Ms. Politte filed a subsequent motion for reconsideration regarding the Court's ruling on Ms. Politte's motion to certify. (Doc. No. 174.) The Court denied that motion on September 19, 2019 and foreclosed further appeal of the alter ego matter as an interlocutory matter. (Doc. No. 197.)

denied the Politte's motion. (*Id*. at 4:22-24). Nine years later, this Court affirmed Judge Sammartino's substantive finding in the instant Action.

On November 13, 2018, Judge Battaglia issued an order granting the Government's Motion for Partial Summary Judgment on the alter ego issue and denying the Polittes and RAJMP's (collectively, "Defendants") respective Motions for Summary Judgment. (Doc. No. 146, 13:8-11). Notably, Judge Battaglia observed "the first proceeding (Alter Ego Action) did end with a final judgment on the merits. This Court held the Polittes are the alter ego of RAJMP in the final judgment on the merits of the previous litigation." (Doc. No. 146, 10:20-22.) From there, Judge Battaglia concluded "the Polittes are collaterally estopped from disputing their status as alter-egos of RAJMP and that assets held by an alter-ego may be reached by the creditor to satisfy the debtor's obligation." (*Id*.) In doing so, Judge Battaglia confirmed Judge Sammartino's substantive determination that the Polittes are alter egos of RAJMP and foreclosed any further dispute on the matter.

Notwithstanding the Court's repeated rulings, the Polittes continue to dispute their alter ego status. Moreover, Defendants have stated their intent to relitigate the issue in this Action and, to that end, seek to reopen discovery on the alter ego issue. The Government opposed Defendants' proposal to engage in such discovery and raised the Parties' discovery dispute before this Court. Consequently, on January 31, 2020, the Court convened a discovery conference to afford the Parties the opportunity to orally assert their positions. Thereafter, the Parties engaged in briefing on the matter, consistent with the Court's February 3, 2020 Order directing them to do so. (Doc. No. 209.) On February 7, 2020, the Government filed the instant Motion for Protective Order Regarding Discovery Pertaining to the Determination that Robert A. Politte and Joan M. Politte Are Alter Egos of RAJMP, Inc. ("Motion" or "Motion for Protective Order"). (Doc. No. 211.) On February 14, 2020, Defendant Joan Politte filed her Response in Opposition to the Government's Motion ("Opposition"). (Doc. No. 215.) On that same day, Defendants Estate of Robert A. Politte ("Estate") and RAJMP joined in Joan Politte's Opposition. (Doc. No. 218.)

# III.  **DISCUSSION**

Federal Rule of Civil Procedure 26(c) provides that a party may move for a protective order against an opponent who is seeking discovery to prevent "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The Rule enumerates ways in which the court may limit discovery, such as by "forbidding the disclosure of discovery" and by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), 26(c)(1)(D); *see also Pike v. Cnty. of San Bernardino*, 2019 U.S. Dist. LEXIS 190466, *5 (C.D. Cal. Feb. 21, 2019). The party seeking a protective order bears the burden of showing "good cause" for the order exists. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). To establish good cause, the moving party must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

The Government moves for a protective order on grounds of irrelevance and undue burden. As a foundational matter, the Government underscores that Defendants already have had the opportunity to engage in discovery regarding the Politte's alter ego status in the prior Alter Ego Action, and the Court has twice resolved their alter ego status on the merits. According to the Government, reopening discovery on this particular subject matter would be equal parts irrelevant and burdensome because it would force the Parties to engage in duplicative and unnecessary discovery. Defendants oppose the Government's Motion and primarily allege that their due process argument implicating the alter ego issue was not addressed by Judge Sammartino on summary judgment in the Alter Ego Action and thus merits discoverability in the instant Action: "rather, the alter ego determination was based primarily upon the substantive law for private litigants arising out of California State case law." (Doc. No. 215 at 2:8-12.) According to Defendants, their due process argument remains outstanding and warrants discovery in this active litigation. Additionally, Defendants argue that the Government has not sufficiently demonstrated any harm it may suffer if a protective order were not issued.

### a. <u>Good Cause Supports the Government's Motion for a Protective Order</u>

Good cause is evident here and supports this Court's issuance of a protective order prohibiting discovery regarding the Politte's alter ego status to any extent. The Politte's status as alter egos of RAJMP has been addressed and resolved by the Court twice on the merits. Judge Sammartino's July 31, 2009 Order denying the Politte's motions for partial summary judgment and Judge Battaglia's November 13, 2018 order granting the Government's motion for partial summary judgment and denying Defendants' motions for summary judgment confirm the same. The Court strains to find any legitimate reason for Defendants' request to reopen discovery on what now amounts to a fully resolved non-issue. Defendants already took discovery on the alter ego issue in the prior Alter Ego Action. Judge Sammartino and Judge Battaglia's respective orders on the Parties' summary judgment motions reflect the same. Indeed, in both the Alter Ego Action and the instant Action, the Parties relied upon information obtained through the discovery process to assert and defend against summary judgment motions that, in relevant part, raised and addressed the alter ego issue. Accordingly, it is indisputable that discovery on this discrete subject matter already has been taken. For this reason, the Court agrees with the Government that further probing into the alter ego issue is irrelevant as it is a non-issue in the instant Action.

Equally important, the Court recognizes the undue burden that would arise if the Parties were permitted to re-litigate the alter ego issue through discovery in the instant Action. The Government stresses this point in its Motion and notes "the written discovery [as propounded by Joan Politte] in this case seeks identical information that the written discovery the Polittes issued to the United States in the original alter ego case was sought." (Doc. No. 211 at 7:18-22.) To counter, Defendants' Opposition fallibly suggests that "the United States has not, and cannot, offer any specific reasons why it will suffer harm or prejudice by responding to the requested discovery." (Doc. No. 215 at 4:5-6.) The burdensomeness of such duplicative and extraneous discovery cannot be overstated. In a protracted litigation such as this, one that spans nearly 13 years and counting, engaging in effective and efficient discovery is paramount and in each party's best interest. A cursory

survey of the docket in this Action, however, reveals the Parties' staunch reluctance to compromise and coordinate efforts to streamline the discovery process. Particularly where judicial intervention has become a near inevitability at just about every turn in the discovery in this Action, the Court recognizes that it is imperative for the Parties to engage in discovery that is relevant, necessary, and clearly warranted. Reopening discovery on the non-issue of the Politte's alter ego status would only undermine this effort. Under such circumstances, a protective order barring discovery on any subject matter implicating the Politte's alter ego status is appropriate and readily justified.

### b. Defendants Are Collaterally Estopped from Seeking Discovery on the Politte's Alter Ego Status

The doctrine of collateral estoppel, or issue preclusion, "bars a party from relitigating an issue identical to one he has previously litigated to a determination on its merits in another action." *Ross v. Int'l Bhd. of Elec. Workers*, 634 F.2d 453, 457 n.6 (9th Cir. 1980); *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S. Ct. 1808 (2001) (stating same). Under Ninth Circuit law, collateral estoppel applies to a question, issue, or fact when four conditions are met: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in a final decision on the merits; (3) there was a full and fair opportunity to litigate the issue; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding. *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012) (emphasis added); *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992); *see also Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).

### i. The Alter Ego Issue Is the Same between the Instant Action and the Prior Alter Ego Action

Here, the four conditions of the collateral estoppel doctrine are met such that the Court may rightfully foreclose relitigation of the alter ego issue. First, the Politte's alter ego status is an issue common to the instant Action and the prior Alter Ego Action. For purposes of the instant Action, Defendants seek to litigate the Government's purported

failure to provide in an administrative setting "any notice or opportunity to be heard" regarding their tax liability. (Doc. No. 215, 8:16-18.) Defendants style the Government's purported lack of "notice and opportunity" as a "due process issue" which was neither addressed nor resolved by either of Judge Sammartino or Judge Battaglia's rulings on the alter ego issue since the rulings relied on substantive due process grounds, not procedural.

The Court rejects Defendants' argument and finds that the due process issue is in fact a sub-issue of the broader alter ego issue that was fully litigated and addressed in the prior Alter Ego Action and the instant Action. Further, there is no shortage of the Polittes raising and litigating the "procedural due process issue" in the prior Alter Ego Action. As the Government aptly notes, between the complaints upon which the Polittes proceeded and their motion for partial summary judgment in the Alter Ego Action, the Polittes indeed submitted to the Court that the IRS failed to provide administrative notice and an opportunity to be heard on their tax controversy. Ultimately, Judge Sammartino denied the Politte's motion for partial summary judgment and substantively found that the Polittes constituted alter egos of RAJMP. (Alter Ego Action Doc. No. 120.)

Defendants contend that the "procedural due process issue" did not significantly inform Judge Sammartino's finding on the alter ego issue, and, therefore, it remains an open question to be resolved. Assuming *arguendo* this is true, it nonetheless is of no help to Defendants. *Hurles v. Ryan*, 752 F.3d 768, 787 (9th Cir. May 16, 2014) (citing *Strickland v. Washington*, 466 U.S. 668 (1984) [holding a court deciding a claim need not address all components of the inquiry if a party makes an insufficient showing on one]). What is significant, however, is Judge Sammartino's ultimate finding on the alter ego issue which necessarily and by legal implication gave consideration to all of the Politte's prior arguments, both procedural and substantive. *Chloe SAS v. Sawabeh Info. Servs. Co.*, 2013 WL 901986, at *5 (C.D. Cal. Jan. 31, 2013) ("The Court read and considered all of Defendants' arguments and issued a comprehensive order which addressed every material argument that bore on the proper resolution of the motion. More is not needed"); *Salinas v. City of San Jos*e, 2011 WL 373955, at *3 (N.D. Cal. Aug. 23, 2011) ("The fact [that] the

17-CV-515-AJB-WVG

court did not address every point or every case cited by [Defendant] . . . does not equate to a failure to consider dispositive arguments, especially when the Order appears complete on its face"). Judge Battaglia affirmed the same in this Action. Thus, the alter ego issue in this Action, inclusive of the related procedural due process sub-issue, is identical to the one already adjudicated in the prior Alter Ego Action. The first condition of collateral estoppel has been met.

### ii. The Alter Ego Issue Was Actually Litigated and Resulted in a Final Determination on the Merits in the Alter Ego Action

The second condition of the collateral estoppel doctrine also has been met. As discussed throughout this Order, the alter ego issue was actually litigated in the prior Alter Ego Action by the Parties, as evidenced through their then-discovery efforts and the Politte's Motion for Partial Summary Judgment as to the Alter Ego Tax Liens. Equally important, Judge Sammartino decided the alter ego matter issue in a final determination on the merits, when she denied Politte's motion for partial summary judgment and substantively held that the Polittes constituted alter egos of RAJMP. (Alter Ego Action Doc. No. 120.)   It was relitigated and resolved again 15 months ago in this Action when Judge Battaglia rendered his Amended Order Denying Joan M. Politte and RAJMP's Motions for Summary Judgment and Granting the Government's Motion for Partial Summary Judgment. (Doc. No. 146.)

### iii. Defendants Were Afforded and Took the Opportunity to Fully Litigate the Alter Ego Issue in the Prior Alter Ego Action

The third condition informing the collateral estoppel doctrine is satisfied as well. In the prior Alter Ego Action, the Parties had, and indeed seized upon, the opportunity to fully litigate the alter ego issue. Defendants particularly focused their efforts in doing so by filing the aforementioned Motion for Partial Summary Judgment as to the Alter Ego Tax Liens and basing it, in part, on what Defendants perceived to be a lack of notice and opportunity to be heard by the IRS in administrative proceedings. Leading up to their dispositive motion filing, Defendants were afforded the opportunity to propound and respond to discovery on

8

the alter ego issue and any sub-issues contributing to their alter ego status, including, but not limited to, whether or not the IRS afforded them sufficient notice and a proper administrative hearing on the matter. Moreover, Defendants availed themselves of that opportunity by engaging in written discovery and depositions that implicated the alter ego issue during the Alter Ego Action. The Government's Motion underscores this fact in alerting the Court that Joan Politte in particular has propounded identical written discovery on the alter ego issue in both the Alter Ego Action and the instant Action. Thus, Defendants cannot in good faith argue that they were denied a full and fair opportunity to litigate the alter ego issue, inclusive of the supposed due process sub-issue.

To the extent, however, Defendants maintain that the Court denied them such opportunity on procedural and/or substantive due process grounds, Defendants have waived their right to assert such a position now, nearly 11 years after Judge Sammartino issued a *substantive* dispositive ruling on the Politte's alter ego status. If at any time during the Alter Ego Action Defendants believed their "due process issue" had been procedurally sidelined by the Court, Defendants could have raised the matter to Judge Sammartino or pursued an appeal of Judge Sammartino's order on Defendants' motion for partial summary judgment on those distinct grounds. *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) (holding that a party waives an argument on appeal by failing to raise it *distinctly*) (citing the Seventh Circuit in *Dunkel*: "[j]udges are not like pigs, hunting for truffles buried in briefs" [internal citations omitted]). Defendants did neither and for good reason—Defendants indeed received and availed themselves of the opportunity to fully litigate all aspects of the alter ego issue. Thus, Defendants have no legitimate basis to argue they were denied procedural due process by the Court. Equally important, Judge Sammartino's substantive determination on summary judgment dispels Defendants' implied charge that the Court failed to hear Defendants' comprehensive position on the alter ego issue. The Court's reliance on the facts in the record, rather than on Defendants' due process argument, to make its final determination on the merits in no way signals that the Court failed to consider the due process argument.

The same conclusions on Defendants' procedural and substantive due process arguments can be drawn in the instant Action. On November 13, 2018, Judge Battaglia upheld Judge Sammartino's determination that the Polittes constitute alter egos of RAJMP after the Parties were again afforded the opportunity to fully brief the alter ego issue and in fact did so. For over a year since then, Defendants have failed to challenge Judge Battaglia's decision on due process grounds connected to the Politte's alter ego status and waited to do so until the Government brought the instant Motion for Protective Order. *Castro v. City of Union City*, 2018 WL 1609327, at *2 (N.D. Cal. Apr. 3, 2018) (rejecting Plaintiff's attempt to "relitigate facts which the Court has already considered" because "the Court cannot find Plaintiff has been diligent in bringing [his] Motion by waiting two years after the Court issued its MSJ Order"); *see also Calloway v. Cal. Dep't of Corr. & Rehab.*, 2010 WL 1221883, at *2 (N.D. Cal. Mar. 24, 2010) (finding plaintiff had not acted diligently by waiting six months to file motion for leave to file motion for reconsideration).

Defendants' extreme delay in disputing the manner in which the Alter Ego Action and the instant Action proceeded on the alter ego issue now precludes Defendants from challenging the Government's Motion on any procedural or substantive due process grounds. The lack of legal authority supporting Defendants' position to the contrary confirms Defendants have waived such argument. Moreover, because the Court in fact provided Defendants the opportunity to fully and fairly litigate all aspects of the alter ego issue, and because Defendants indeed did so, the third condition of the collateral estoppel doctrine is met.

### iv.  __The Parties to the Prior Alter Ego Action Are the Same as the Parties to the Instant Action__

Fourth and finally, the same parties exist between this Action and the prior Alter Ego Action. The Government was a party to both actions, as was Robert A. and Joan M. Politte. Further, non-parties in prior litigation, such as the Estate of Robert A. Politte and RAJMP, are bound by the judgment because their interest was "adequately represented by someone with the same interests who was a party." *Taylor v. Sturgell*, 553 U.S. 880, 893-94 (2008)

(citing *Richards v. Jefferson Cnty.*, 517. U.S. 793, 798 (1996)). Although Robert A. Politte, who was a party to the prior Alter Ego Action, is now deceased, he is represented in the instant Action in the name of his Estate, a successor-in-interest; this circumstance thus satisfies the fourth condition of the collateral estoppel doctrine. *Id*. (citing *Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 593 (1974) (stating suits brought by trustees, guardians, and other fiduciaries satisfy the same party requirement for purposes of collateral estoppel analysis). Further, although RAJMP was not a named party to the Alter Ego Action, the Court's substantive finding that the Polittes constitute alter egos of RAJMP confirm that RAJMP's interest was adequately represented in the prior action.

Accordingly, the same parties were involved in the prior Alter Ego Action and in the instant litigation. Taking this condition together along with all others discussed above, the collateral estoppel doctrine's requirements are fulfilled. Thus, Defendants may be properly barred from engaging in any discovery relating to the alter ego issue, including, but not limited to, the Politte's status as alter egos of RAJMP and the IRS' purported denial of administrative notice and an opportunity to be heard regarding Defendants' tax liability[2].

## IV.    CONCLUSION

The Court GRANTS the Government's Motion in its entirety. The Politte's status as alter egos of RAJMP shall not be probed into during discovery for any reason and through any mechanism, including, but not limited to, written discovery, subpoenas, and depositions. The Court will not entertain any further discovery disputes on the alter ego

---

[2] During the January 31, 2020 discovery conference on this dispute, Defendants raised equitable grounds as a basis for relief from the Government's Motion pursuant to 26 U.S.C. section 7403. Defendants appear to have abandoned this argument in their Opposition. Nonetheless, the Court addresses it briefly here, finding no equitable grounds under section 7403 to spare Defendants from a protective order against discovery on the alter ego issue. *See United States v. Rodgers*, 461 U.S. 677, 709-10 (1983) ("district courts may exercise a degree of equitable discretion in section 7403 proceedings" on a "limited" basis where there is "the possibility that innocent third parties will be unduly harmed by the [Government's collection] effort"). The *Rodgers* standard, even if relaxed, which it should not be, cannot be met under the facts of this action.

issue, and any related sub-issues, as the alter ego issue has been decisively resolved in the prior Alter Ego Action and in the instant Action.

**IT IS SO ORDERED**.

DATED: March 19, 2020

_____
Hon. William V. Gallo
United States Magistrate Judge